**Vera YOUNG, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. 86 Civ. 9492 (RLC).**

United States District Court, S.D. New York.

Oct. 21, 1988.

Gladstein, Reif & Meginniss, Brooklyn, N.Y. (Walter M. Meginniss, Jr., of counsel), for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Bernard W. Bell, Asst. U.S. Atty., of counsel), for the U.S. Postal Service.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Vera Young, a former postal clerk, brings this wrongful discharge action for reinstatement and backpay against the United States Postal Service ("Postal Service" or "Service") under Section 1208 of the Postal Reorganization Act ("the Act").[1] 39 U.S.C. §§ 101–6440. She alleges that her termination is in violation of the collective bargaining agreement between the Service and the American Postal Workers Union, and charges the Union with a breach of its duty of fair representation.[2]

Plaintiff demands a jury trial under Rule 38, F.R.Civ.P.[3] She maintains that the Postal Service, by virtue of its authority to "sue and be sued," is a legally independent entity subject to all forms of legal process and liability, including jury trial.

Defendant moves to strike that demand under Rule 39(a) F.R.Civ.P.[4], alleging that the Service as a federal instrumentality enjoys immunity from suit absent waiver by the Government and that such circumstances plaintiff is not entitled to a jury trial.

*Discussion*

It is well settled that "the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government" *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed. 2d 548 (1981); *see also Galloway v. United States,* 319 U.S. 372, 388 & n. 17, 63 S.Ct. 1077, 1086 & n. 17, 87 L.Ed. 1458 (1943); *Jones–Hailey v. Corporation of Tenn. Valley Authority,* 660 F.Supp. 551, 552 (E.D.Tenn.1987); *Griffin v. United States Postal Service,* 635 F.Supp. 190, 192 (N.D. Ga.1986). The Seventh Amendment preserved the right to trial by jury as it existed in suits at common law. *See* 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2302, at 14 (1971). "It hardly can be maintained that under the common law of 1791 jury trial was a matter of right for persons asserting claims against the sovereign." *Galloway,* 319 U.S. at 388, 63 S.Ct. at 1086; *see also* 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2314, at 68 (1971). Thus, the right to a jury trial in suits against the government exists only pursuant to congressional mandate. "[T]here can be no doubt that Congress has full power to endow [a federal instrumentality] with the government's immunity from suit or to determine the extent to which it may be subjected to the judicial process." *Federal Housing Admin. v. Burr,* 309 U.S. 242, 244, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940); *see also Galloway,* 319 U.S. at 388– 89 & n. 18, 63 S.Ct. at 1086–87 & n. 18; 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2314, at 69.

The right to a jury trial against the United States arises, however, only if Congress, by statute, "clearly and unequivocally" or "affirmatively and unambiguously" grants

---

1. "Suits for violation of contracts between the Postal Service and a labor organization representing Postal Services employees ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy." 39 U.S. C. § 1208(b).

2. Plaintiff's claims against the Union were settled.

3. Rule 38(b), F.R.Civ.P. provides that "[a]ny party may demand a trial by jury of any issue triable of right by a jury...."

4. Rule 39(a), F.R.Civ.P., states in pertinent part: "The trial of all issues so demanded shall be by jury, unless ... the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States."

such right.[5] *Lehman,* 453 U.S. at 161–162 & n. 9, 168, 101 S.Ct. at 2701–02 & n. 9, 2705; *cf. United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (waiver of sovereign immunity "cannot be implied but must be unequivocally expressed," quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969)). Such waivers are the exception.[6] "When Congress has waived the sovereign immunity of the United States, it has almost always conditioned that waiver upon a plaintiff's relinquishing any claim to a jury trial." *Lehman,* 453 U.S. at 161, 101 S.Ct. at 2701. Congress, however, is not bound by its usual practice. Therefore, the court must determine not only whether plaintiff's claim arises against the United States, but, if so, whether Congress has "affirmatively and unambiguously" rendered the Service amenable to jury trial.

When Congress passed the Postal Reorganization Act of 1970, it responded to a widely acknowledged "need for sweeping reforms in postal policies and operations." H.R.Rep. No. 1104, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 3649, 3652 [hereinafter U.S. C.C.A.N.]. The Act thoroughly reformed the existing Post Office Department by removing it from the President's Cabinet and recasting it in the form of "an independent establishment of the executive branch of the Government of the United States to be known as the United States Postal Service." *Id.* at 3654.

The new legislation aimed to insulate the Service from direct political pressure, to remedy chronic inefficiencies in service, to create a framework for satisfactory labor-management relations, and to remove numerous obstacles to the streamlined operation of the nation's postal system. *Id.* at 3650–54. The overarching goal was to create a Postal Service capable of conducting its affairs "on a business like basis, while retaining the public service character of the Nation's mail system." *Id.* at 3654. Congress thus empowered the new Service to sue and be sued, to adopt rules and regulations, to enter into and perform contracts, to keep its own system of accounts, to acquire and sell property, to construct and operate buildings and equipment, to accept gifts or donations, to settle and compromise claims by or against it, to exercise the right of eminent domain, and to have all other powers incidental, necessary or appropriate to the carrying on of its functions or powers. *See* 39 U.S.C. § 401(1)–(10).

The court has no doubt, however, despite defendant's autonomy in managing its own affairs, the Postal Service remains a federal entity. The language and legislative history of the Postal Reorganization Act support this conclusion. Although an independent establishment empowered to sue and be sued, the Service remains nonetheless an "independent establishment *of the executive branch of the Government of the United States.*" 39 U.S.C. § 201 (emphasis added).[7] In addition, although Congress endeavored to make postal affairs more

---

**5.** In addition, Rule 38(a), F.R.Civ.P., "requires an affirmative statutory grant of the right where ... the Seventh Amendment does not apply." *Lehman v. Nakshian,* 453 U.S. 156, 165, 101 S.Ct. 2698, 2704, 69 L.Ed.2d 548 (1981). "Since there is no generally applicable jury trial right that attaches when the United States consents to suit, the accepted principles of sovereign immunity require that a jury trial right be clearly provided in the legislation creating the cause of action." *Id.* at 162 n. 9, 101 S.Ct. at 2702 n. 9.

**6.** Congress has not, for example, provided for jury trials in cases that fall within the broad jurisdiction of the Court of Claims, *see* 28 U.S.C. § 1491 (encompassing all cases against the federal government founded on the Constitution, an Act of Congress, an executive regulation, an

express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort); *Glidden Co. v. Zdanok,* 370 U.S. 530, 572, 82 S.Ct. 1459, 1484, 8 L.Ed.2d 671 (1962), or that fall within the concurrent jurisdiction over such claims of the United States district courts, *see* 28 U.S.C. §§ 1346(a)(2) and 2402, or that sound in tort, *see* 28 U.S.C. §§ 1346(b) and 2402.

**7.** The House report is even more unambiguous on this point. It states that the Postal Service is to be "an independent establishment *in* the Executive Branch of the Government...." U.S.C. C.A.N. at 3650 (emphasis added). Elsewhere, the report states that the Service will remain "within" the executive branch of the Government. *E.g., id.* at 3657.

businesslike, and the Postal Service itself eventually self-sustaining, the Postal Service remains "first, last, and always" a public service, U.S.C.C.A.N. at 3668, whose "broad policy guidelines" are set by Congress. *Id.* at 3661.

Congress further directed that the Service be "operated as a basic and fundamental service provided to the people by the Government of the United States," 39 U.S. C. § 101(a), whose "basic function" is "to provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people." *Id.* Moreover, the President appoints the nine members of the Postal Service Board of Governors, with the advice and consent of the Senate, 39 U.S.C. § 202; Treasury Department appropriations fund the Service,[8] 39 U.S.C. § 2401; and employees of the Service are part of the civil service. 39 U.S.C. § 1001(b). These ties between the Service and the federal government suggest that plaintiff's suit, although lodged against a "sue and be sued" instrumentality, arises against the United States.

Plaintiff responds that the Service, by virtue of its authority to "sue and be sued," is legally independent of the sovereign and that all incidents of its immunity must be deemed waived. Plaintiff's Br. at 13. "Sue and be sued" clauses have routinely been interpreted as broad waivers of sovereign immunity.[9] *See, e.g., Reconstruction Finance Corp. v. J.G. Menihan Corp.,* 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941) (RFC liable for court costs and allowances); *Burr,* 309 U.S. at 245, 60 S.Ct.

at 490 (FHA subject to garnishment proceedings); *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939) (Regional Agricultural Credit Corporation subject to tort suits); *Active Fire Sprinkler Corp. v. United States Postal Service,* 811 F.2d 747, 752 (2d Cir.1987) (government immunity provides no obstacle to equitable claim against USPS); *Beneficial Finance Co. v. Dallas,* 571 F.2d 125, 127 (2d Cir.1978) (U.S. Postal Service held amenable to garnishment proceedings). Moreover, as plaintiff points out, the Service possesses "powers equivalent to [those of] a private business enterprise, such as the power to make contracts, keep accounts, and to acquire and lease property." *Beneficial Finance Co.,* 571 F.2d at 128. Furthermore, the Postal Service "competes with private carriers in the delivery of mail." *Id.* Congress voiced its wish to have "the Postal Service … run more like a business than … its predecessor, the Post Office Department." *Franchise Tax Board,* 467 U.S. at 519–20, 104 S.Ct. at 2553–54 (footnote omitted). Finally, the United States Supreme Court has determined that "[b]y launching 'the Postal Service into the commercial world,' and including a sue-and-be-sued clause in its charter, Congress has cast off the Service's 'cloak of sovereignty' and given it the 'status of a private commercial enterprise.'" *Loeffler v. Frank,* — U.S. —, 108 S.Ct. 1965, 1970, 100 L.Ed.2d 549 (1988) (holding Postal Service subject to prejudgment interest in Title VII action) (quoting *Library of Congress v. Shaw,* 478 U.S. 310, 317 n. 5, 106 S.Ct. 2957, 2963 n. 5, 92 L.Ed.2d 250 (1986)).

---

**8.** "There is established in the Treasury a Postal Service Fund to be credited with all revenues and receipts of the Postal Service and to be available for the payment of any and all expenses incurred by the Postal Service without the need for annual appropriations." U.S.C.C.A.N. at 3658. Moreover, the terms and conditions of the Service's obligations are subject to consultation with the Secretary of the Treasury. *Id.*

**9.** Moreover, Congress has waived defendant's immunity on terms even more expansive than those occasioned by a mere "sue and be sued" clause. Not only did Congress provide that the Postal Service could "sue and be sued," 39 U.S.

C. § 401(1), but it declared that the Service was empowered "to settle and compromise claims by or against it," 39 U.S.C. § 401(8), and that "[t]he provisions of chapter 171 and all other provisions of title 28 relating to tort claims shall apply to tort claims arising out of activities of the Postal Service," 39 U.S.C. § 409(c). "Neither of these provisions would have been necessary had Congress intended to preserve sovereign immunity with respect to the Postal Service." *Franchise Tax Board v. United States Postal Service,* 467 U.S. 512, 519, 104 S.Ct. 2549, 2553, 81 L.Ed.2d 446 (1984) (footnote omitted). Such has been the "nearly universal conclusion" of the lower federal courts. *Id.* at n. 12.

That defendant's immunity has been waived in broad terms does not alter its identity as a federal entity with respect to those incidents of its immunity that have been retained. As the United States Court of Claims has held, a "sue and be sued" clause does not in itself make defendant a private entity. In *Coley Properties Corp. v. United States*, 593 F.2d 380, 219 Ct.Cl. 227 (1979), the court held that a contractor's claim against the Postal Service was a claim against the United States:

Although Congress waived the sovereign immunity from suit of the Postal Service in [the] Act, that does not make [plaintiff's] claim any the less a claim against the United States. Indeed, if that were the effect of the legislation, we would have no jurisdiction over this suit at all.

*Id.* 593 F.2d at 387; *see also Beneficial Finance Co.*, 571 F.2d at 127 ("Postal Reorganization Act ... created a governmental instrumentality").

The "sue and be sued" language presumably would have been unnecessary had Congress intended to have the Service treated as a private entity from its inception. *Cf. Jones–Hailey*, 660 F.Supp. at 553 (Tennessee Valley Authority enjoys sovereign immunity "as evidenced by the fact that Congress had to waive this immunity in order to allow suits against the TVA").

The court therefore rejects plaintiff's suggestion that *Lehman* is inapplicable because that decision applies solely to actions against the sovereign.[10] Only one court has found *Lehman per se* inapplicable to a "sue and be sued" instrumentality. In *Algernon Blair Industrial Contractors v. Tennessee Valley Authority*, 552 F.Supp. 972 (M.D.Ala.1982), the court held that the TVA, empowered to "sue and be sued," did not enjoy sovereign immunity, *id.* at 974, and accorded plaintiff the right to a jury trial on its claim against the TVA under the Contract Dispute Act, 41 U.S.C. §§ 601–613, even though the statute did not clearly

and unequivocally confer that right. The court wrote:

By not specifically providing for a jury trial under the Contract Dispute Act, the Court does not construe Congress as intending to deny a plaintiff his traditional right to a jury trial in contract cases in district court where the defending party is an independent Governmental agency such as TVA and where from the time of such agency's creation, Congress has expressly conferred on it the power to sue and be sued without any limitation.

*Id.* at 974.

Other courts have rejected this view. *Jones–Hailey v. Corporation of Tenn. Valley Authority*, 660 F.Supp. 551 (E.D. Tenn.1987), explicitly stated that *Algernon* was wrong. The TVA enjoyed sovereign immunity, the court found, "as evidenced by the fact that Congress had to waive this immunity in order to allow suits against the TVA." *Id.* at 553. Further, the *Jones–Hailey* court stated that "[t]his waiver does not, as *Algernon* holds, act as a complete and unqualified relinquishment of all aspects of sovereign immunity." *Id.* Applying *Lehman*, the court concluded that, in the absence of a clear and unequivocal congressional conferral of the right to a jury trial, plaintiff's jury demand must be stricken. *Id.*

*Griffin v. United States Postal Service*, 635 F.Supp. 190 (N.D.Ga.1986), applied the *Lehman* rule to the Postal Service. The *Griffin* court declared that "[a]n action against the Postal Service, although 'an independent establishment of the executive branch of the [federal government],' 39 U.S.C. § 201, is an action against the federal government for purposes of [the *Lehman*] rule." *Id.* at 192. The court struck plaintiff's demand for a jury, because the Postal Reorganization Act did not "clearly and unequivocally" confer that right. *Id.* at 192–93. This court agrees with *Coley*

---

**10.** In *Lehman v. Nakshian*, the Court wrote:
[E]ven if the legislative history were ambiguous, that would not affect the proper resolution of this case, because the plaintiff *in an action against the United States* has a right to trial by jury only where Congress has affirma-

tively and unambiguously granted that right. Congress has most obviously not done so here.
453 U.S. at 168, 101 S.Ct. at 2705 (emphasis added).

that a claim against the Service arises against the United States; it agrees with *Griffin* that *Lehman* is controlling.[11]

Plaintiff argues further that the "sue and be sued" clause constitutes a waiver of defendant's immunity from jury trial. The Postal Reorganization Act is silent on the availability of a jury trial in claims against the Service. The "sue and be sued" clause, 39 U.S.C. § 401(1), makes no mention of a jury trial. The legislative history of the Act similarly is mute. Since Congress does not provide for the right to a jury trial "affirmatively and unambiguously," plaintiff's jury demand must be stricken.

Plaintiff argues that a trilogy of cases, *Federal Housing Admin. v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940); *Keifer v. Keifer,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939); *Reconstruction Finance Corp. v. J.G. Menihan Corp.,* 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941), espousing the now well-settled presumption that waivers of immunity are to be liberally construed is controlling. This presumption, she maintains, requires the court to conclude that the "sue and be sued" clause in the Act encompasses all normal incidents of suit, including the right to a jury trial.

In *Federal Housing Admin. v. Burr,* the Court held that the FHA, a "sue and be sued" instrumentality, was amenable to state garnishment and attachment proceedings because those proceedings fell within the normal connotation of the words "sue and be sued." Justice Douglas wrote:

> [W]e start from the premise that such waivers by Congress of governmental immunity in case of such federal instrumentalities should be liberally construed. This policy is in line with the current disfavor of the doctrine of governmental immunity from suit.... Hence, when Congress establishes such an agency, au-

thorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued', it cannot be lightly assumed that restrictions on that authority are to be implied.

*Id.* at 245, 60 S.Ct. at 490.

In *Keifer & Keifer,* the Court noted the "steadily growing policy of governmental liability," and cautioning that exceptions to an unqualified consent to suit were not lightly to be made, held that the Regional Agricultural Credit Corporation ("Regional"), although not expressly subject to suit, did not enjoy sovereign immunity. *Id.* at 396–97, 59 S.Ct. at 521–22. Finally, relying on *Keifer & Keifer* and *Burr,* the Court held in the third case of the trilogy, *Reconstruction Finance Corp. v. J.G. Menihan Corp.,* that the Reconstruction Finance Corporation, another "sue and be sued" federal instrumentality, was liable for costs that were a "natural and appropriate incident" of legal proceedings. *Id.* at 85, 61 S.Ct. at 487.

Together, *Burr, Keifer & Keifer,* and *Menihan* "stress that a general 'sue and be sued' clause in a statute creating a federal corporation will be interpreted by the Court as a general waiver of sovereign immunity as to that entity." *Beneficial Finance Co.,* 571 F.2d at 127. Plaintiff argues that denying her demand for a jury trial would conflict with these controlling precedents.[12]

The issue presented is whether *Burr* applies to plaintiff's claim against the Postal Service. Under *Lehman,* plaintiff does not have the right to a jury trial if the Postal Reorganization Act does not "affirmatively and unambiguously" grant that right. Under *Burr,* plaintiff has a right to a jury trial only if the court concludes that that right falls within the normal meaning of the words "sue and be sued" and that none

---

**11.** Claims that arise under the Tucker Act, 28 U.S.C. § 1346(a)(2), are not triable by jury. *See* 28 U.S.C. § 2402 ("Any action against the United States under section 1346 shall be tried by the court without a jury"). Defendant does not claim that the Tucker Act governs. Plaintiff argues, however, in a footnote that the Tucker Act is inapplicable. Plaintiff's Br. at 16 n. 6. The court does not reach this issue. The parties

have not fully briefed the applicability of the Tucker Act, and the court addresses defendant's motion on different grounds.

**12.** Alternatively, she argues that a jury trial falls within the normal connotation of the words "sue and be sued."

of the exceptions to the *Burr* rule apply.[13] For the reasons below, the court is persuaded that *Burr* is not pertinent to plaintiff's demand for a jury trial; thus, *Lehman* must control.

*Burr* requires a liberal construction of waivers affecting the types of claims or the forms of judicial process that may be employed against the sovereign,[14] *see Burr*, 309 U.S. at 245, 60 S.Ct. at 490 ("waivers by Congress of governmental immunity in case of ... federal instrumentalities should be liberally construed"), but it has not been extended to issues involving the availability of a jury.[15] *See infra* n. 16. Thus, courts have held that a "sue and be sued" clause renders a federal instrumentality liable for court costs, *see J.G. Menihan Corp.*, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941); or subject to a state garnishment order, *see Franchise Tax Board*, 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984) (Postal Service subject to state order to withhold delinquent taxes from employee's salary and to transfer those funds to state); or amenable to certain types of suit, *see Active Fire Sprinkler Corp.*, 811 F.2d 747 (2d Cir.1987) (Postal Service subject to suit in equity for recovery of money under a contract); *S.S. Silberblatt, Inc.*, 608 F.2d 28 (1979) (Secretary of Housing and Urban Development suable for amounts due on a project financed under the National Housing Act). Most recently, the United States Supreme Court has held that the Service is amenable to prejudgment interest on a Title VII award. *Loeffler*, 108 S.Ct. at 1971.

None of these cases, however, has involved the issue at hand: the identity of the factfinder.[16]

The most that *Burr* requires is that the Postal Service be treated as "no less amenable to judicial process, and no less subject to liability for its acts, than any other business enterprise." *Active Fire Sprinkler Corp.*, 811 F.2d at 752 (citing *Franchise Tax Board*, 467 U.S. at 517–518, 104 S.Ct. at 2552–2553); *cf. Beneficial Finance Co.*, 571 F.2d at 128 ("congressional purpose in creating USPS was to allow it to operate in 'businesslike' fashion"); *Franchise Tax Board*, 467 U.S. at 517–18, 104 S.Ct. at 2552–53); *cf. Beneficial Finance* at 489) ("not only must [the court] liberally construe the sue-and-be-sued clause, but also we must presume that the Service's liability is the same as that of any other business"). But striking plaintiff's jury demand would not render the Service less amenable to judicial process, or less subject to liability for its acts, than any other business.

Plaintiff characterizes "trial by jury ... [as] ordinarily a part of 'civil process incident to the commencement or continuation of legal proceedings,'" Plaintiff's Br. at 12–13 (quoting *Burr*, 309 U.S. at 245, 60 S.Ct. at 490), and thus attempts to bring her jury demand within the terms of *Burr*. Plaintiff argues that not including the availability of a jury trial as part of the definition of process is a "restricted, hypertechnical reading of the word process."

**13.** This understanding of *Burr* is consistent with *S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28 (2d Cir.1979), which states that *Burr*'s presumption "leaves even less room for an assertion that the waiver [of immunity] excludes certain *causes of action* than for an assertion that it excludes certain *types of process.*" *Id.* at 36 n. 10 (emphasis added).

**14.** The exceptions are stated in *Burr:* (1) inconsistency with a statutory or constitutional scheme, (2) the risk of grave interference with governmental business, or (3) other plain reasons to construe the "sue and be sued" clause narrowly. *Federal Housing Admin. v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940). Applying these exceptions to this case, however, begs the question of whether *Burr* applies to all.

**15.** Plaintiff disagrees: "Indeed, to apply the [*Lehman*] presumption to 'sue and be sued' instrumentalities would contravene the express holdings of *FHA v. Burr, Franchise Tax Board,* and the myriad of other Supreme Court and circuit court decisions ... [that] not only hold that the 'sue and be sued' clause is a broad waiver of immunity as to all aspects of civil process, but ... also prescribe a specific three-part test" for creating exceptions to that rule. Plaintiff's Br. at 13; *accord supra* n. 13.

**16.** Plaintiff has cited no authority, nor has the court discovered any, that requires this court to analyze the jury trial issue under the *Burr* presumption.

Letter from Lawyer for Plaintiff to Court dated June 28, 1988.

The court disagrees, but even if plaintiff were correct, *Lehman's* specificity, holding that any waiver of sovereign immunity regarding the right to a jury trial must be "clearly and unequivocally" expressed, takes precedence over other cases, *e.g.*, *Loeffler*, 108 S.Ct. at 1969 (quoting *J.G. Menihan Corp.*, 312 U.S. at 85, 61 S.Ct. at 487), that indicate a general tendency to construe liberally waivers of immunity with regard to the "natural and appropriate incidents of legal proceedings." *See supra* p. 16. The court will not find *Lehman* explicitly overruled by general principles of other cases that nowhere mention specifically the right to a jury trial.

*Conclusion*

In summary, for the reasons stated above, the court holds that plaintiff is not entitled to a jury trial. Defendant's motion to strike her jury demand is therefore granted.

IT IS SO ORDERED.